UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**POWER THE FUTURE**
    Plaintiff

    v.

**DEPARTMENT OF THE INTERIOR**
    Defendant

Civil Action No. 24-2453 (JDB)

## MEMORANDUM OPINION

This Freedom of Information Act (FOIA) case is about the adequacy of the Department of Interior's (Interior) search for text message records. Because the text messages were kept only on cell phones that were lost or damaged such that the records cannot now be retrieved, Interior conducted an adequate search and found no responsive records, thereby satisfying its FOIA obligations. The Court therefore will grant Interior's motion for summary judgment.

### Background

FOIA is "a means for citizens to know what their Government is up to." Accuracy in Media v. CIA, 134 F.4th 1236, 1238 (D.C. Cir. 2025) (quoting NARA v. Favish, 541 U.S. 157, 171 (2004)). It allows the public to "pierce the veil of administrative secrecy." Id. (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)). FOIA provides this transparency by generally requiring government agencies to make records available on request. 5 U.S.C. § 552(a)(3).

On June 5, 2024, Power the Future (PTF) requested from Interior copies of text messages sent to or from Deputy Chief of Staff for Policy, Kate Kelly, from January 21 to February 28, 2021 and from June 30 to July 30, 2022. Pl.'s Resp. to Def.'s Statement of Material Facts Not in Genuine Dispute ¶ 2 (Pl.'s Facts Resp.), Dkt. 18-1. PTF hoped to learn from those messages about

1

the last administration's climate agenda. Compl. ¶ 11, Dkt. 1. Interior failed to make a "determination" on whether to comply with PTF's request within the statutory time limit, thereby satisfying PTF's exhaustion requirement and leading to this suit. Def.'s Answer ¶ 15, Dkt. 7; see also 5 U.S.C. § 552(a)(6)(A)-(C) (setting out administrative exhaustion requirements); Citizens for Resp. and Ethics in Wash. v. FEC, 711 F.3d 180, 184-90 (D.C. Cir. 2013) (examining same).

After PTF filed suit, Interior issued a final determination informing PTF that Interior had searched its files and not found any responsive records. Decl. of Leah Fairman ¶ 13, Dkt. 17-4. According to Interior's FOIA Officer, Leah Fairman, Kelly lost her phone around May 13, 2022 and damaged her replacement phone around May 24, 2023, and Interior's Office of the Chief Information Officer (OCIO) cannot retrieve text messages unless the phone is in working condition and accessible. Id. ¶¶ 7-10. Accordingly, Interior moved for summary judgment. Def.'s Mot. for Summ. J., Dkt. 17-1.

In response, PTF submitted an expert declaration casting doubt on Interior's explanation. According to PTF's expert, Don Lueders, federal records management regulations require Interior to have an external archiving system to back up records stored on a physical device. Decl. of Don Lueders ¶¶ 8-9 (First Lueders Decl.), Dkt. 18-2 (citing 36 C.F.R. § 1236.20).[1] In the alternative, Lueders stated that the responsive records might be kept by the cellular carrier or stored on the second phone's undamaged SIM card. Id. ¶ 10.

---

[1] 36 C.F.R. § 1236.20 is a National Archives and Records Administration (NARA) regulation that sets out agency recordkeeping requirements in general. See 36 C.F.R. § 1220.10. Under the Federal Records Act, the term "record" includes information in physical or electronic form that is "made or received by a Federal agency under Federal law or in connection with . . . public business and preserved or appropriate for preservation . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities" of the government. 44 U.S.C. § 3301(a). Thus, only information that is appropriate for preservation based on the enumerated criteria is considered a record.

To rebut PTF's expert, Interior then submitted a declaration from Giovanni Gomez, Mobile Device Program Manager in the Enterprise Services Division of OCIO, to elaborate on Interior's data management practices and capabilities. Decl. of Giovanni Gomez, Dkt. 20-2. Gomez explained that under Interior's records management policy it is the record custodian's (here, Kelly's) responsibility to preserve messages that warrant preservation either by "performing screen captures or by requesting device backup services." Id. ¶¶ 7-8 (citing Records Management Policy: Preserving Text and Instant Messages as Federal Records, RMP-2020-11 (June 8, 2021), https://www.doi.gov/sites/doi.gov/files/rmp-2020-11-no-memo-508-compliant-version-complete.pdf [https://perma.cc/8JLH-NC8X]; Records Management Policy: Electronic Records Management, RMP-2021-02 (Sept. 8, 2022), https://www.doi.gov/sites/doi.gov/files/rmp-2021-02-electronic-records-management-remediated.pdf [https://perma.cc/7S65-ZEJV]).[2]

According to Gomez, screen captures are inaccessible where a phone is lost or damaged, and there is no record of Kelly requesting device backup services. Id. ¶ 9-10. Interior also does not have a central, real-time archiving system. Id. ¶ 11. Gomez additionally met with the Director of Mobility at Verizon, Kelly's cellular carrier, to inquire whether Kelly's text messages were retrievable from Verizon. Id. ¶ 14. Because Verizon retains text messages for only 7 days and keeps text message records—showing whom messages are sent to and from—for only 90 days, no records could be retrieved from Verizon either. Id. ¶ 15-16 & n.2. Finally, because SIM cards store only contacts and not text messages, no records could be retrieved that way. Id. ¶¶ 17-20.

---

[2] RMP-2021-02 requires preserving text messages in accordance with RMP-2020-11. See RMP-2021-02 at 4. RMP-2020-11 requires employees to "preserve text messages that warrant preservation by either performing screen captures or by requesting device backup services provided by their supporting information technology (IT) organizations . . . ." RMP-2020-11 at 2. It further explains that text messages are "typically [t]ransitory [r]ecords" that are "not automatically archived" and "should be used only for brief notifications or non-substantive communications." Id. Transitory records have a "very short-term retention period of 180 days or less." 36 C.F.R. § 1236.22(c). Whether or not Kelly complied with her custodial responsibilities to preserve messages appropriate for preservation by performing screen captures, that does not bear on Interior's compliance with its FOIA duties here.

In surreply, PTF first challenged the submission of the Gomez declaration on reply. Pl.'s Sur-Reply Mem. in Opp'n to Mot. for Summ. J. 3-4 (Pl.'s Surreply), Dkt. 22. PTF further argued that the Gomez declaration was conclusory as to the SIM card issue and contradicted as to Verizon's message retention policy and Interior's compliance with its records management policy. Id. at 5-6.

## Discussion

Courts assessing the adequacy of an agency's FOIA search review the record de novo. See 5 U.S.C. § 552(a)(4)(B); Accuracy in Media, 134 F.4th at 1240; Conservation Force v. Ashe, 979 F. Supp. 2d 90, 97 (D.D.C. 2013) (Jackson, J.). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Watkins L. & Advoc., PLLC v. DOJ, 78 F.4th 436, 442 (D.C. Cir. 2023) (quotation omitted). It is the agency's burden to show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." Accuracy in Media, 134 F.4th at 1241 (quoting Am. Oversight v. HHS, 101 F.4th 909, 923 (D.C. Cir. 2024)).

A search's adequacy depends on "a standard of reasonableness" and "the facts of each case." Id. (quotation omitted). To assess the adequacy of a search, the Court "may rely on a reasonably detailed affidavit setting forth the search terms and the type of search performed and averring that all files likely to contain responsive materials (if such records exist) were searched." Id. (citation modified). Such affidavits (or declarations) are "accorded a presumption of good faith

that cannot be rebutted by speculative claims about the existence and discoverability of other documents." Am. Oversight, 101 F.4th at 923 (citation modified).

Here, Interior has explained that the devices containing the responsive records were lost or damaged, so the records cannot be retrieved. Fairman Decl. ¶¶ 7-10. In response to Lueders' first declaration positing alternative ways to recover the records, Interior further clarified that its records management policy puts the onus on the record custodian (Kelly) to either take screen captures of messages that should be considered federal records or use backup services. Gomez Decl. ¶¶ 7-8. Because the phones at issue have been lost or damaged—hence, screen captures are not recoverable—and Kelly did not request backup services, the records therefore remain irretrievable. Id. ¶¶ 9-10. Moreover, the cellular carrier does not retain text message records long enough for them to be retrievable that way and Kelly's second phone's SIM card does not store text message data. Id. ¶¶ 14-20.

Lueder's first declaration offers only "speculative claims" about the recoverability of Kelly's text messages that are not enough to overcome the "presumption of good faith" accorded to Interior's declarations. Am. Oversight, 101 F.4th at 923 (quotation omitted). And as Interior points out, its good-faith showing is bolstered by having provided text messages of another senior official to PTF in a FOIA request seeking information on the same topic around the same time. See Def.'s Reply in Supp. of Mot. for Summ. J. 2, Dkt. 20; Joint Status Report, Power the Future v. Dep't of Interior, Civ. A. No. 24-2073 (Oct. 3, 2024), Dkt. 8.

In surreply, PTF first takes issue with Interior providing a declaration along with its reply to explain the technological capabilities of SIM cards and its efforts to confirm with Verizon what text message retention policies Verizon had in place. Pl.'s Surreply 3-4. But Interior only did so to respond to PTF advancing its SIM card and cellular carrier arguments in its opposition brief and

5

declaration.  Thus, this is not an instance of a party raising arguments for the first time on reply.[3] See, e.g., Twin Rivers Paper Co. v. SEC, 934 F.3d 607, 615 (D.C. Cir. 2019) ("[A]rguments generally are forfeited if raised for the first time in reply.").  In any event, PTF has now had an opportunity through its surreply to respond to any new arguments introduced by Interior in reply.

PTF next contends that the Gomez declaration is conclusory.  Pl.'s Surreply 5; see also SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (explaining that declarations must be "relatively detailed and non-conclusory" (quotation omitted)).  Not so.  Gomez discusses PTF's SIM card theory in five paragraphs, explaining why the text messages being sought were not retrievable from the SIM card.  Gomez Decl. ¶¶ 17-21.  PTF speculates that the particular make and model of Kelly's phone might have stored text messages in the SIM card, see Decl. of Don Lueders ¶ 14 (Second Lueders Decl.), Dkt. 22-1, but that speculation is not enough to rebut the presumption of good faith accorded to Gomez's declaration.

PTF also points out that Gomez and Lueders reach different conclusions as to Interior's records management policy, with Lueders arguing that the text messages would be retrievable if Interior followed its policy because the messages would be preserved in a NARA-compliant repository, not just the custodian's phone.  Pl.'s Surreply 6; Second Lueders Decl. ¶¶ 8-12.  But whether Interior's records management systems are sufficiently robust does not bear on whether the records sought in this FOIA request are retrievable.

Finally, PTF highlights that Lueders believes based on his training and experience that Verizon keeps metadata and logs for one to two years after a message is sent.  Pl.'s Surreply 6; Second Lueders Decl. ¶ 15.  But Lueders has offered no evidence of Verizon's records retention

---

[3] In any event, denying Interior's explanation in its reply would not have resulted in the disclosure of requested records.  The remedy for failing to conduct an adequate search would have been to order Interior to do precisely what it did here—explore these other avenues for potentially recovering the text messages.

policy to contradict Gomez's declaration that he spoke with Verizon and that Verizon explained that it keeps text message metadata for only 90 days.  Gomez Decl. ¶ 16 n.2; see also Grimes v. District of Columbia, 794 F.3d 83, 94-95 (D.C. Cir. 2015) (explaining that at summary judgment the non-movant must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial" (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986))).  Again, PTF's speculation cannot overcome the presumption of good faith.

The Court has some sympathy for PTF, which cannot obtain records to which it may otherwise be entitled under FOIA due to the arguable shortcomings of Interior's records management policy and the fortuity of Kelly's lost and then damaged phones.  However, that does not affect the adequacy of Interior's search.  Accordingly, Interior has shown "beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents,'" so it is entitled to summary judgment.  Am. Oversight, 101 F.4th at 923 (quotation omitted).

## CONCLUSION

For the foregoing reasons, the Court will grant Interior's motion for summary judgment.  A separate order will accompany this opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: September 25, 2025